UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OLGA COSME, ) | |
| ) | Case No. 1:17CV0535 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE CHRISTOPHER BOYKO |
| ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | REPORT AND RECOMMENDATION |
| ) | |

Plaintiff Olga Cosme ("Cosme" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be affirmed.

I. PROCEDURAL HISTORY

On July 30, 2013, Cosme filed an application for SSI benefits, alleging disability beginning July 30, 2013. (R.9, PageID #: 85, 310-317, 318-324, 355-364, 354 (changing

disability onset date).) Cosme's application was denied initially and upon reconsideration. (R.9, PageID #: 85, 135-153, 154-163.) Thereafter, Cosme filed a request for a hearing before an administrative law judge. (R.9, PageID #: 177-178.)

The ALJ held a hearing on August 12, 2015. (R.9, PageID #: 103-144.) Cosme appeared at the hearing, was represented by counsel, and testified. (*Id.* at 105-106, 113-122.) A vocational expert ("VE") also attended the hearing and provided testimony. (*Id.* at 105-106, 132-143.) A medical expert testified as well. (*Id.* at 122-131.)

On January 29, 2016, the ALJ issued his decision, applying the standard five-step sequential analysis to determine whether Cosme was disabled. (R.9, PageID #: 85-97; *see generally* 20 C.F.R. § 416.920(a).) Based on his review, the ALJ concluded Cosme was not disabled. (R.9, PageID #: 85, 97.)

The Appeals Council denied Cosme's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R.9, PageID #: 56-59.) Cosme now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

Cosme presents the following legal issue for the court's review:

> The ALJ found that Ms. Cosme retains the residual functional capacity to perform a range of sedentary work with some additional restrictions. This finding lacks the support of substantial evidence because the ALJ failed to include in the findings limitations regarding Ms. Cosme's need to elevate her leg throughout the day and the ALJ failed to include findings limiting Ms. Cosme's inability to communicate in English.

(R. 11, PageID #: 653.)

II.  PERSONAL BACKGROUND INFORMATION

Cosme was born on January 13, 1984, and was 29 years old, which is defined a younger individual age 18-49, on the application date.  (R.9, PageID #: 318, 95.)  Cosme has at least a high school education, and is able to communicate in English.  (R.9, PageID #: 95, 359.)  Cosme had past work as a cashier for a brief period in 2006.  (R.9, PageID #: 133-135.)

III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Cosme's brief alleging error by the ALJ.  Cosme applied for SSI on July 30, 2013.  (R.9, PageID #: 318-324, 85.)  Cosme listed her physical or mental conditions that limit her ability to work as:  "thrombophlebitis in leg, severe headaches, chest pains, pain in legs."  (R.9, PageID #: 358.)

Results from a May 2, 2009, left leg venous duplex doppler revealed extensive deep venous thrombosis ("DVT") in the left leg extending from the common femoral vein down to the posterior tibial vein.  (R. 9, PageID #: 419.)  The clot was heterogeneous, with echogenic foci indicating a chronic thrombus.  *Id.*  A bilateral leg venous duplex on February 19, 2010, revealed partial thrombosis of the left common femoral vein, superficial femoral vein, deep femoral vein, greater saphenous vein, popliteal vein, and peroneal vein, with echogenic thrombi visualized.  *Id.* at 420.  (The right leg was unremarkable.  *Id.*)

---

[1] The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

3

Another left leg venous duplex doppler was performed on May 9, 2013, which showed acute DVT involving the common femoral vein and proximal superficial femoral vein, with an incompetent valve producing insufficiency at the superficial and deep venous systems. (R. 9, PageID #: 423.)

On July 29, 2013, Cosme presented to Mercy Medical Center complaining of worsening pain in her left leg, palpitations and chest pain with difficulty breathing. (R. 9, PageID #: 434.) There was no edema of the extremities on examination, and Cosme appeared comfortable with normal affect. *Id.* at 435. A chest CT showed a calcified right middle lobe nodule, likely a benign granuloma. *Id.* at 437. Cosme was diagnosed with chest wall pain, and discharged in stable condition. *Id.* at 438.

State agency physician Phyllis Sandell, M.D., completed a Physical RFC Assessment on October 26, 2013. (R. 9, PageID #: 148-150.) Dr. Sandell found Cosme capable of lifting fifty pounds occasionally, and twenty pounds frequently. *Id.* at 149. She could stand or walk for a total of two hours, and sit for a total of six hours, of an eight-hour workday. *Id.* Cosme could occasionally push or pull with the left leg, and should alternate sitting and standing for five minutes hourly. *Id.* Dr. Sandell opined that Cosme could occasionally climb ramps or stairs, and occasionally kneel, crouch, or crawl, but she could never climb ladders, ropes or scaffolds. *Id.* She could frequently balance. *Id.* Dr. Sandell explained that the postural limitations resulted from Cosme's leg pain, and "chronic anticoagulation" (medication) meant she should avoid heights. *Id.* at 149-150. Dr. Sandell opined that Cosme should also avoid concentrated exposure to hazards such as machinery. *Id.* at 150. Dr. Sandell's RFC assessed that, because of claimant's recurrent or chronic DVT, she would do best in a sedentary vocation. *Id.*

4

On reconsideration, State agency physician S. Ram Upadhyay, M.D., concurred with Dr. Sandell's Physical RFC Assessment, on January 31, 2014. (R. 9, PageID #: 158-160.)

Cosme presented to Gundumalla Goud, M.D., as a new patient on September 4, 2014. (R. 9, PageID #: 453-455.) Cosme reported that her active problems included DVT and right shoulder pain. *Id.* at 453. The doctor increased her Coumadin dosage, and advised her to apply moist heat to her shoulder. *Id.* at 455.

On April 11, 2015, Cosme presented to the emergency room with a complaint of lower abdominal pain. (R. 9, PageID #: 499-504.) Musculoskeletal and neurological exams were negative. *Id.* at 500, 513. A CT scan showed a large amount of complex fluid compatible with hemorrhage. *Id.* at 502. Cosme had a gynecology consultation for concern about a possible ruptured hemorrhagic ovarian cyst. *Id.* at 502-503, 515-516. The gynecologist, Samir Ahuja, M.D., decided to stop her Coumadin temporarily to reverse her anticoagulation. *Id.* at 516. Dr. Ahuja noted "it is impossible to obtain a history from the patient as she speaks minimal English," and had no one with her who could help translate. *Id.* Cosme was discharged on April 13, 2015. *Id.* at 533.

Cosme had a left leg venous ultrasound on April 22, 2015, that showed "echogenic material consistent with nonocclusive thrombus within the common femoral vein." (R. 9, PageID #: 446.)

Cristina Canella, psychiatric nurse practitioner, completed a Mental RFC Assessment on June 25, 2015. (R. 9, PageID #: 600-602.) NP Canella diagnosed Cosme with adjustment disorder, with mixed anxiety and depressed mood. *Id.* at 600. She opined that, "from a mental

5

health standpoint only," Cosme was generally capable of sustaining an 8-hour workday, five days per week. *Id.*

Linda Spahr, R.N., completed a Medical Source Statement on July 1, 2015. (R. 9, PageID #: 608-610.) Nurse Spahr diagnosed Cosme with recurrent DVT, with symptoms of pain in her legs and abdominal pain from recurring clots. *Id.* at 608. She wrote that Cosme was unable to walk long distances, or stand. *Id.* The prescribed medications Coumadin upset her stomach, and Percocet caused dizziness and fatigue. *Id.*

Nurse Spahr opined that Cosme could sit, stand, and walk only thirty minutes at a time for a total of only one hour each per workday. (R. 9, PageID #: 609.) The nurse stated that Cosme would need to take "multiple" unscheduled breaks throughout a workday, because she is unable to stand for more than one hour, and on average she will need to rest 45 minutes before returning to work. *Id.* Nurse Spahr estimated that Cosme would be absent from work three to four days per month, due to blood draws, pain, swelling of her legs and recurrent DVTs. *Id.* at 610.

On July 14, 2015, Cosme had a functional capacity assessment by a physical therapist, Karin Kleppel, with the assistance of a Spanish-language interpreter. (R. 9, PageID #: 612-622.) The therapist noted normal range of motion and strength in the spine, arms, and right leg, but found decreased strength in the left leg due to pain and swelling. *Id.* at 614. Kleppel assessed that Cosme would have a low tolerance to all weight-bearing activities, which "would eliminate her ability to perform any job that includes standing or walking for any length of time." *Id.* Cosme's ability to sit for any length of time would also be affected by left leg pain and swelling.

6

*Id.* Kleppel recommended further rehabilitation such as exercising and walking in her community pool. *Id.*

A medical expert, Dr. Krosky, testified at the hearing. (R. 9, PageID #: 122-131.) Dr. Krosky testified that the medical evidence of record that she reviewed supported a finding that Cosme had severe impairments of chronic deep vein thrombosis in her left leg, as well as chronic venous insufficiency in her left leg. *Id.* at 124. Dr. Krosky testified that, since July 30, 2013, Cosme has not had any impairment that met or medically equaled the criteria for any listing. *Id.* at 126. The doctor opined that Cosme would probably fall into the sedentary RFC level. *Id.*

Counsel for Cosme asked Dr. Krosky whether she would recommend that Cosme elevate her leg to relieve the pain and swelling in her left leg, and the doctor responded that, "It could be possibly be that she will need to do it," "probably at least on a stool." (R. 9, PageID #: 129.) Counsel asked if it was "reasonable" that "she has to elevate her leg about four hours throughout a day, at least straight up but preferably heart level," and the doctor responded, "It's possible." *Id.* at 130.

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his January 29, 2016, decision:

> 1. Ms. Cosme has not engaged in substantial gainful activity since July 30, 2013, the application date (20 CFR 416.971 *et seq.*).
>
> 2. Ms. Cosme has the following severe impairments (20 CFR 416.920(c)): Chronic venous insufficiency in the left lower extremity. Residuals of deep venous thromboses, one of which occurred in or about May 2, 2009, and one of which occurred in or about May 9, 2013. One of the residuals was that Ms. Cosme has had to take Coumadin, a blood thinning medication.

7

3. Ms. Cosme does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, I find that Ms. Cosme has the residual functional capacity to perform work subject to the following limitations on her ability to work:

Ms. Cosme could and can do work at the sedentary exertional level only, with all that implies with respect to exertional and postural limitations (see 20 CFR 416.967 for further details about what those are), subject to the following additional limitations.
Ms. Cosme could and can bend, stoop, crouch, squat, kneel, and crawl up to and no more than occasionally.
Ms. Cosme could and can climb steps and ramps up to and no more than occasionally.
Ms. Cosme could not and cannot climb ladders, ropes, or scaffolds.
Ms. Cosme could not and cannot work in proximity to unprotected heights, dangerous moving machinery, or other workplace hazards.
Ms. Cosme could not and cannot operate a motor vehicle as part of a job.
Ms. Cosme could not and cannot work in an environment where there would be exposure to knives or other sharp objects.
Ms. Cosme could and can communicate with the public, coworkers, and supervisors fluently in Spanish but not fluently in English.

5. Ms. Cosme is unable to perform any past relevant work (20 CFR 416.965).

6. Ms. Cosme was born on January 13, 1984, and was 29 years old, which is defined a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. Ms. Cosme has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because Ms. Cosme's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. Ms. Cosme has not been under a disability, as defined in the Social Security Act, since July 30, 2013, the date the application was filed (20 CFR 416.920(g)).

(R.9, PageID #: 87-89, 95-97.)

## V. DISABILITY STANDARD

A claimant is entitled to receive SSI benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

9

> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may

examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII. ANALYSIS

Cosme's appeal presents one legal issue with two sub-parts for the court's review. She challenges the ALJ's residual functional capacity determination, asserting the ALJ failed to incorporate Cosme's need to elevate her leg, and Cosme's inability to communicate in English. (R. 11, PageID #: 653.)

### A. Need to Elevate Leg

Cosme argues that, when the ALJ assessed her RFC, he "unreasonably failed to include Ms. Cosme's need to elevate her left [leg]." (R. 11, PageID #: 662.) The ALJ addressed the issue as follows:

> I give no weight to [Dr. Krosky]'s opinion that Ms. Cosme . . . should have her left leg elevated on a stool while sitting in each case because I found insufficient evidence in the record considered as a whole to support the opinion in question. In the case of left leg elevation, I did not find medical source records or any other medical evidence in the file in which someone treating Ms. Cosme recommended or prescribed that she elevate her left [leg] while sitting.

(R. 9, PageID #: 93.)

Cosme notes that the ALJ found severe impairments of chronic venous insufficiency in the left leg, and residuals of DVTs. (R. 11, PageID #: 662; R. 9, PageID #: 88, 90.) Cosme's brief asserts that, during the hearing, Cosme testified that she needs to sit down and elevate her

11

leg after doing things around the house. *Id.*, citing R. 9, PageID #: 120. She contends that the ALJ "did not consider Ms. Cosme's testimony regarding her need to elevate her leg." *Id.*, citing R. 9, PageID #: 90. Cosme's assertion is incorrect, however. The ALJ specifically stated, in considering claimant's daily activities: "She watched television, did things at home, and elevated her legs." (R. 9, PageID #: 92.) The ALJ determined that Cosme's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible for the reasons explained in the decision. *Id.* at 90.

Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must determine the claimant's credibility based on a consideration of the entire case record. *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007). To the extent that the ALJ's findings are based on the credibility of the claimant, those findings are accorded great weight and deference. *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 2004); *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008). The ALJ is not permitted to make credibility determinations based solely upon intangible or intuitive notions about an individual's credibility, but rather the ALJ's credibility determinations must be "based on a consideration of the entire case record," and "must find support in the record." *Rogers*, 486 F.3d at 247-248. The ALJ's assessment of the claimant's credibility must be supported by substantial evidence.

Cosme's brief argues that "the ALJ's decision is devoid of any discussion as to why he finds Ms. Cosme's need to elevate her leg not credible." (R. 11, PageID #: 663.) Again, this is

12

an inaccurate assertion. As quoted above, the ALJ stated that he gave no weight to Dr. Krosky's testimony (that it was "possible" that Cosme might need to elevate her leg to relieve pain and swelling), because he found no medical evidence in the file in which anyone treating Cosme recommended or prescribed that she elevate her leg. (R. 9, PageID #: 93; *see generally* R. 9, PageID #: 129-130.) Cosme concedes that "there is not an examining source who recommended that Ms. Cosme elevate her leg," but contends this is not a sufficient reason to reject Dr. Krosky's testimony. (R. 11, PageID #: 663.) Cosme argues that "Dr. Krosky's opinion is consistent with the medical literature." (R. 11, PageID #: 663, citing a Johns Hopkins medical website which stated chronic venous insufficiency treatment "may . . . include elevating the legs to reduce pressure in the leg veins.")

Cosme asserts that Dr. Krosky gave an opinion that Cosme "should elevate her leg throughout the day." (R. 11, PageID #: 664.) A review of Dr. Krosky's testimony does not support this assertion. Dr. Kronsky testified that various options were "possible."[2] The doctor did not propose any specific restrictions on her own. *See generally* R. 9, PageID #: 129-131. Similarly, the Johns Hopkins website exhibit submitted by plaintiff simply identified a possible treatment (treatment "may include" elevating legs).

Although the Commissioner does not raise the issue, Dr. Krosky's testimony that "it could possibly be that she [Cosme] will need to" elevate her leg (R. 9, PageID #: 129), falls short

---

[2] *E.g.*, Q. Would you recommend elevating the leg? A. "It could possibly be that she will need to do it..." (R. 9, PageID #: 129); Q. "If you heard her testify that she has to elevate her leg about four hours throughout a day ... would that be reasonable? A. It's possible." *Id.* Incidentally, Cosme did not testify at the hearing that she needed to elevate her leg for four hours.

13

of a medical opinion as contemplated by the regulations. A medical "opinion" under the regulations describes not only the nature and severity of the claimant's impairments, but also what the claimant is capable of doing despite her impairments, and what her physical restrictions are in the workplace. *See* 20 C.F.R. § 416.927(a)(2); *see, e.g.*, *Dunlap v. Commissioner*, No. 11-5633, 2012 WL 6700319, at *3 (6th Cir. Dec. 27, 2012). Dr. Krosky does not opine a definite workplace restriction for Cosme of elevating her leg, only that she "could possibly" have a need to elevate her leg.

In addition, the ALJ reasonably discounted Cosme's testimony concerning elevating her legs because a workplace restriction based on her comments was not supported by a physician's express medically-supported physical restriction, and was inconsistent with the medical evidence in the record. *See* 20 C.F.R. § 416.929(a); *Temples v. Commissioner*, No. 12-5816, 2013 WL 600218, at *2 (6th Cir. Feb. 15, 2013) (per curiam).

For the above reasons, the court finds that the ALJ's decision on this matter was supported by substantial evidence.

## B.  English Fluency

Cosme contends the ALJ failed to include findings "limiting [her] inability to communicate in English." (R. 11, PageID #: 653.) Cosme argues that the ALJ's RFC found that Cosme can communicate with the public, coworkers and supervisors fluently in Spanish, but not fluently in English. (R. 11, PageID #: 664.) But when considering Cosme's vocational factors, the ALJ found that Cosme is able to communicate in English. *Id.*, citing R. 9, PageID #: 95. Cosme argues that "there is simply nothing in the record to support the ALJ's finding that Ms.

14

Cosme if capable of communicating in English." (R. 11, PageID #: 664.) As such, she argues there is not substantial evidence to support the ALJ's finding. *Id.*

The ability to communicate in English is relevant to the ALJ's education determination. *Garcia v. Secretary, HHS*, 46 F.3d 552, 554 (6th Cir. 1995). One of the vocational considerations that the regulations require an ALJ to address is the claimant's "ability to communicate in English" when evaluating what work may be available. 20 C.F.R. § 416.964(b)(5). The ALJ considered plaintiff's argument that the RFC should have included Cosme "was totally unable to communicate in English" and the VE's testimony that a complete inability to communicate in English would reduce the U.S. job base to insignificance. (R. 9, PageID#: 92, 97.) But the ALJ determined, "I found insufficient evidence in the record considered as a whole to persuade me that Ms. Cosme is totally unable to communicate in English." *Id.* at 92. As such, the ALJ determined that Cosme is able to communicate in English. (R. 9, PageID #: 95.) The ALJ reasonably weighed the evidence in the record and the RFC findings included the following language limitation: "Ms. Cosme could and can communicate with the public, coworkers, and supervisors fluently in Spanish but not fluently in English." *Id.* at 89.

Plaintiff has the burden of showing further limitations. The record, however, contains a Disability Report that Cosme filed with the Commissioner, which substantially undermines the plaintiff's contention. That Disability Report indicates that she can speak and understand English. (R. 9, PageID #: 357-358, responses 1.G and 2.E.) The Report, which her previous attorney completed, also indicated that there was no other language preference, although it

15

indicated that she could not read and understand English. *Id.* at 357-358.[3] At the hearing, Cosme testified with the assistance of an interpreter, a fact that the ALJ determined was not determinative of her ability to communicate in English. (*Id.* at 92, 97.) In addition, the ALJ noted that Cosme testified her English was "so-so." *Id.* at 119. She also testified that she always needed help with English in the workplace. *Id.* at 119-120.

The court notes a distinction between the ability to communicate in a language, and being fluent in a language. To be fluent[4] in English implies a greater knowledge of the language than simply having an ability to communicate[5] in English. The evidence supports the ALJ's finding that Cosme had a limited ability to communicate in English, although she was not fluent in English. (R. 9, PageID #: 89, 95, 119, 357; *see also* PageID #: 140 (ALJ's restriction was claimant was not fluent in English, not that she cannot communicate in English).)

---

[3] The court notes that other documents in the record suggest that Cosme speaks "little English," "minimal English," or no English (*see, e.g.*, R. 9, PageID#: 506, 516, 365). In reviewing the Commissioner's decision, however, courts do not resolve conflicts in the record. *Wright*, 321 F.3d at 614; *Garner*, 745 F.2d at 387.

[4] *See, e.g.*, *Webster's New World College Dictionary* 545 (4th ed. 2007) ("able to write or speak easily, smoothly and expressively"); *Merriam-Webster's Collegiate Dictionary* 646 (10th ed. 1993) ("ready or facile in speech"); *see also Oxford English Dictionary* (http://www.oed.com) ("Of a speaker, etc.: Ready in the use of words, able to express oneself readily and easily in speech or writing").

[5] *See, e.g.*, *Webster's New World College Dictionary* 295 (4th ed. 2007) ("to give or exchange information, signals, or messages in any way, as by talk, gestures, or writing"); *Merriam-Webster's Collegiate Dictionary* 232 (10th ed. 1993) ("to convey knowledge of or information about: make known"); *see also Oxford English Dictionary* (http://www.oed.com) ("To impart (information, knowledge, or the like (to a person; also formerly with); to impart the knowledge or idea (of something), to inform a person of; to convey, express; to give an impression of, put across.")

Courts have noted that the ability to communicate in English is not dispositive to the determination of disability:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance.

*Rivera v. Commissioner*, No. 3:13CV772, 2014 WL 4956224, at *13 (N.D. Ohio Sept. 30, 2014) (quoting *Deaton v. Commissioner*, No. 08-5249, 2009 WL 585788, at *5 (6th Cir. Mar. 5, 2009)); *see also Medina v. Berryhill*, No. 1:16CV02524, 2017 WL 3601917, at *7 (N.D. Ohio Aug. 22, 2017) (quoting 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(i)).  In this case, the VE testified at the hearing that in unskilled, sedentary level jobs there was minimal need to communicate with other people.  (R. 9, PageID #: 140.)

The ALJ reasonably weighed the evidence in the record, which although limited, does not support Cosme's contention that she is unable to communicate in English.  Rather, the ALJ reasonably determined that the record as a whole demonstrated that she can communicate in English in a meaningful, although not proficient manner.  As such, the ALJ recognized and accounted for Cosme's limited proficiency in the English language by assigning an RFC that reasonably accommodated her limitations.  At Step Five, the ALJ considered Cosme's RFC, age, education and work experience and then relied upon the VE's testimony when determining that she could perform a significant number of available jobs, namely she

> . . . could perform the requirements of representative sedentary exertion level and unskilled (SVP 2) occupations such as a Final Assembler (DOT #713.687-018) with 25,000 jobs in the nation and 1,000 jobs in Ohio; Electronic Assembler (DOT #726.684-110) with 40,000 jobs in the nation and 1,800 in Ohio; [and] Toy Stuffer (DOT #731.685-014) with 15,000 jobs in the nation and 750 jobs in Ohio.

17

(R. 9, PageID #: 96, *see also* 89, 136-138); *see generally Medina*, 2017 WL 3601917, at *7 (ALJ's RFC reasonably accommodated language limitations); *Rivera*, 2014 WL 4956224, at *14 (same).

For the above reasons, the court finds that the ALJ's decision on this matter was supported by substantial evidence.

## VIII.  CONCLUSION

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence. The decision of the ALJ should be affirmed.


                                                 s/ David A. Ruiz
                                                 David A. Ruiz
                                                 United States Magistrate Judge


Date:  <u>January 24, 2018</u>

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).